UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

In re:

DARLEEN M. WINSTON,                                    Case No. 08-11025
                                                       Chapter 13
                 Debtor.
--------------------------------------------------------
APPEARANCES:

LAW OFFICES OF RONALD J. KIM                           Ronald J. Kim, Esq.
*Attorney for Debtor*
P.O. Box 318
Saratoga Springs, NY 12866

STEVEN J. BAUM, P.C.                                   Marc D. Hess, Esq.
*Attorneys for Creditor*
220 Northpointe Parkway, Suite G
Amherst, NY 14228

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

     Before the court is the objection of Countrywide Home Loans, Inc. ("Countrywide") to debtor Darleen M. Winston's proposed Chapter 13 plan.  Countrywide argues that the plan must comply with 11 U.S.C. § 1322(b)(2),[1] which prohibits the modification of the rights of a creditor whose interest is secured only by real property that is the principal residence of the debtor. Meanwhile, Ms. Winston contends that the plan provisions are permissible under § 524(i), which allegedly contemplates, and thereby allows, plan provisions dictating how a secured creditor shall administer the debt and apply pre- and post-petition payments to the account.  Ms. Winston also objects to the inclusion of $300.00 in post-petition, pre-confirmation attorneys' and "plan review" fees in Countrywide's proof of claim.

---

[1] All statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

1

After reviewing this matter, the court makes the following conclusions of law:

1. Section 524(i) is solely a remedy for debtors and does not permit Chapter 13 plan provisions that conflict with § 1322(b)(2);

2. The contested plan provisions deeming mortgage arrearages contractually cured and creating an agency relationship between Countrywide and an unknown transferee impermissibly modify Countrywide's rights;

3. The contested plan provision providing for the monthly crediting of direct mortgage payments does not impermissibly modify Countrywide's rights, but is surplusage; and

4. Countrywide's inclusion of post-petition, pre-confirmation attorneys' and plan review fees in its proof of claim is permissible.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(L), and 1334(b).

## FACTS

The parties have stipulated the following facts. (Joint Statement of Facts (Doc. No. 20).)

On or about February 24, 2005, Ms. Winston executed a mortgage with Mortgage Amenities Corp., predecessor in interest to Countrywide. The terms of the mortgage include the following:

> **2. Application of Borrower's Payments and Insurance Proceeds.**
>
> Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order: First, to pay interest due under the Note; Next to pay principal due under the Note; and Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
>
> Such payments will be applied to each Periodic Payment in the order in which it became due.
>
> Any remaining amounts will be applied as follows: First to pay any late charges; Next, to pay any other amounts due under this Security Instrument; and Next, to reduce the principal balance of the Note.
>
> If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the

> late Periodic Payment and the late charge.  If more than one Periodic Payment is due, Lender may apply any payment received from me; First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.
>
> Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.
>
> Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

(Joint Statement of Facts, Ex. A.)  On April 4, 2008, Ms. Winston filed a Chapter 13 Petition with this court.  At the time of filing, the Debtor was behind five mortgage payments in the amount of $729.42 per month.  The Debtor's plan included the following pertinent provisions:

> Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the trustee on the pre-petition arrearages, if any, only to such arrearages; to deem the pre-petition arrearages as contractually cured by confirmation; to apply the direct mortgage payments, if any, paid by the trustee or by the debtor to the month in which they were made under the plan or directly by the debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account; to notify the trustee, the debtor and the attorney for the debtor of any changes in the interest rate for an adjustable rate mortgage and the effective date of the adjustment; to notify the trustee, the debtor and attorney for the debtor of any change in the taxes and insurance that would either increase or reduce the escrow portion of the monthly mortgage payment; and to otherwise comply with 11 U.S.C. Section 524(i).
>     . . . .
> [i]f a claim has been transferred by the holder thereof after the holder has filed a proof of claim with the Trustee, then the failure of the transferee to file evidence of the terms of the transfer with the Clerk of the Bankruptcy Court, with the Trustee, and with the attorney for the debtor(s) shall not serve to remove the transferor as a creditor in this case and in such situation all actions taken by the transferee subsequent to the transfer shall be deemed acts of the transferor to the same extent as if the transferee was a duly appointed agent of the transferor acting fully within the courts and scope of his, her or its agency.

(Joint Statement of Facts, Ex. B.)

On May 1, 2008, Countrywide filed a proof of claim with pre-petition arrears totaling $3,947.10. (Joint Statement of Facts, Ex. C.) Countrywide then filed an objection to various provisions of Ms. Winston's plan on June 20, 2008. It is this objection that the court now evaluates.

## SUMMARY OF ARGUMENTS

Countrywide objects to various provisions of Ms. Winston's Chapter 13 plan, arguing that it cannot be confirmed because (1) Ms. Winston's reliance on § 524(i) of the Bankruptcy Code is misplaced; (2) the provisions of paragraph 7(f) of the Chapter 13 plan[2] directly contravene the Bankruptcy Code and Countrywide's rights pursuant to the terms of the note and mortgage; (3) the proposed plan language imposes an agency relationship that Countrywide has not consented to; (4) the proposed plan language violates Rule 3001(e)(4); and (5) Ms. Winston unilaterally changes the amount of the pre-petition arrears owed to Countrywide. Ms. Winston counters that the disputed plan provisions are not only contemplated by §524(i), but required by it. Furthermore, Ms. Winston argues that the court should overrule Countrywide's objection to the total pre-petition arrears amount of $3,647.10 because it includes $300.00 in attorneys' and plan review fees that occurred post-petition.

## ANALYSIS

The court addresses each of these arguments in turn, beginning with an objective analysis of § 524(i), and following with a subjective analysis of each of the disputed provisions. After resolving the objections to the plan provisions, the court addresses the appropriateness of including post-petition fees in the proof of claim for pre-petition arrears.

---

[2] *See supra* Facts, pp. 2-3.

4

**I. Section 524(i) provides only a remedy post-discharge, and thus Chapter 13 plan provisions must fully comply with § 1322(b)(2)**

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act, which resulted in significant changes to the Bankruptcy Code. Among those changes was the addition of § 524(i), which provides that:

> (i) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2)[3] if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i) (2008). This provision clearly provides a remedy for a debtor, post-discharge, when (1) a creditor willfully fails to credit payments received under a valid, confirmed plan that the debtor has not defaulted on, and (2) the debtor suffers material injury as a result of creditor's failings. *In re Patton*, No. 08-23038, 2008 WL 5130096, at *2 (Bankr. E.D. Wis. Nov. 19, 2008). Ms. Winston maintains that the intent of this remedy—to protect debtors from the improper crediting of plan payments by creditors—sanctions her plan provisions establishing how to credit plan payments and providing for punitive measures against offending creditors. This interpretation, however, potentially trumps the anti-modification provision of § 1322(b)(2), which provides that:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>     . . . .
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*,

---

[3]    (a) A discharge in a case under this title—
    . . . .
    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]
11 U.S.C. § 524(a)(2).

5

> or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added). Thus, Ms. Winston's provisions may stand, so long as they also adhere to the requirements regarding Chapter 13 plans in other provisions of the Bankruptcy Code, specifically § 1322(b)(2).[4] Ms. Winston's argument that § 524(i) stands as an outright exception to § 1322(b)(2), to the extent it protects her from the improper crediting of her plan payments, is untenable. Section 524(i) contains no language indicating that it is anything other than a post-discharge remedy. *In re Collins*, No. 07-30454, 2007 WL 2116416, at *4 (Bankr. E.D. Tenn. July 19, 2007).

Nevertheless, before embarking upon the subjective analysis of the disputed provisions, the court must also devote some discussion to § 1322(b)(5), which *does* explicitly provide an exception to the anti-modification provision, and may rescue Ms. Winston's provisions from oblivion. Section 1322(b)(5) provides in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> . . . .
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). The aforementioned section clearly provides an exception to § 1322(b)(2) and, as a result, plan provisions related to the curing of Ms. Winston's default on Countrywide's note may modify Countrywide's rights under the mortgage agreement. *Collins*, 2007 WL 2116416, at *11 (citing *Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993)).

---

[4] Other courts have found that provisions such as those proposed by Ms. Winston also potentially violate § 1325, which governs confirmation of the plan. *E.g.*, *In re Anderson*, 382 B.R. 496, 503 (Bankr. D. Or. 2008). While Countrywide invoked such a violation in its Objection to Confirmation, it failed to brief the matter in its Memorandum of Law, with the exception of a reference to § 1325(b)(5), which is clearly a typographical error as no such subsection exists. *See* 11 U.S.C. § 1325. The court therefore refrains from a discussion of § 1325, but does acknowledge the potential for conflict between it and Ms. Winston's interpretation of § 524(i).

6

In light of the foregoing, the court now turns to a subjective analysis of the disputed plan provisions.

### i. *Arrearages deemed contractually cured*

The first disputed provision requires holders and/or servicers of claims secured by liens on real property to "deem the pre-petition arrearages as contractually cured by confirmation." (Joint Statement of Facts, Ex. B.)  Several courts have evaluated the appropriateness of this and other very similar provisions, and while there is some division over semantics, the purpose of the provision is uniformly accepted as proper. *Compare In re Booth*, No. 4:08-BK-14892, 2009 WL 81327, at *7 (Bankr. E.D. Ark. Jan. 14, 2009), *and Patton*, 2008 WL 5130096, at *4, *and In re Emery*, 387 B.R. 721, 725 (Bankr. E.D. Ky 2008), *and In re Watson*, 384 B.R. 697, 708 (Bankr. D. Del. 2008), *and Collins*, 2007 WL 2116416, at *14, *with In re Segura*, No. 08-14280 MER, 2009 WL 416847, at *3 (Bankr. D Colo. Jan. 9, 2009), *and In re Hudak*, No. 08-10478-SBB, 2008 WL 4850196, at *5 (Bankr. D. Colo. Oct. 24, 2008), *and Anderson*, 382 B.R. at 503. Provisions such as this have been designed to instruct noteholders, such as Countrywide, that the confirmation of the plan has, in effect, bifurcated the debt into two separate components, and thereby mandates that the post-petition payments be treated as current from the date of confirmation of the plan. *See Collins*, 2007 WL 2116416, at *14.  Under such a paradigm, debtors can liquidate and pay down the pre-petition default through the plan, while staying current on the post-petition payments, and thus exit the bankruptcy process current on their obligations.[5]

---

[5] The necessity for such a provision has become evident to debtors who have diligently made their Chapter 13 plan payments, while keeping current on their post-petition mortgage payments, but who discover upon discharge that the holder of their note has failed to differentiate between plan payments and ongoing mortgage payments. John Rao, *A Fresh Look at Curing Mortgage Defaults in Chapter 13*, 27 AM BANKR. INST. J. 14 (Feb. 2008).  In those instances, all funds were often attributed to the oldest debt due (per accounting practices often enumerated in the mortgage agreement).  Adherence to these accounting principles in the case of a bankrupt debtor often leads to the incursion of substantial fees and a state of constant default throughout pendancy of the plan.  This results in debtors receiving

This purpose is not only sensible, but legally proper under § 1322(b)(5). Section 1322(b)(5) provides for the modification of the noteholder's rights in order to effect a cure of the default under the plan. *Id.* at *11. This bifurcation of the mortgage debt is clearly within the intent of § 1322(b)(5), as it provides a means to accurately liquidate the default and provide the debtor the opportunity to cure the arrearage.[6] *Id.* at *14.

Having established the purpose and legality of a provision of this nature, the court now turns to Ms. Winston's drafting. Other bankruptcy courts have found that while the purpose of similar provisions was proper, the drafting was ambiguous, and therefore sustained creditor's objections. *Hudak*, 2008 WL 4850196, at *4; *Anderson*, 382 B.R. at 503-05. In one such case, the court found that "*as presently crafted by Debtor's counsel*, Debtor is requesting a modification of Creditor's lien rights . . . [t]o deem a loan contractually current *upon* confirmation without qualifying language is premature and inconsistent with the Bankruptcy Code." *Hudak*, 2008 WL 4850196, at *4. The *Hudak* court went on, however, stating that "[a]lternative language, such as 'deeming' the loan contractually current on confirmation—but 'subject to and contingent on successful completion of mortgage cure payments and regular monthly mortgage payments under the plan' might serve the purpose desired by Debtor and still not modify the creditors [sic] lien rights." *Id.* at *5. This court takes a similar view. It should be very clear that the legal fiction created by "deeming"[7] the default contractually cured applies

---

their discharge, but also being left with a substantial default—a complete frustration of the purpose of filing for bankruptcy in the first place. *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (discussing the purpose of the Bankruptcy Code as being to afford the honest debtor a "fresh start").

[6] The court accepts the *Collins* decision to the extent of its §1322(b)(5) analysis, but disagrees with its designation of the plan provision as being "merely procedural." *Collins*, 2007 WL 2116416, at *14. The court believes the *Collins* court's finding that the provision is merely procedural, and therefore not a modification, to be nebulous and a potential opening for the modification of creditors' rights in contravention of § 1322(b)(2).

[7] One court pointed out that the word "deem" has varied meanings. *Patton*, 2008 WL 5130096, at *4. Moreover, this variation is made all the more troubling as the dictionary definition "[t]o consider or judge" is actually the secondary, and disfavored definition, in *Black's Law Dictionary*, which defines deem as "[t]o treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have." Compare WEBSTER'S II NEW

8

only to the extent it impacts Countrywide's accounting practices. Should Ms. Winston fail to make plan payments, Countrywide may seek dismissal of the case and, upon dismissal, again revert to treating the two debts as one. The court thus sustains Countrywide's objection, unless and until Ms. Winston attaches a clause to the provision indicating the limited scope of the legal fiction it creates.

### ii.   *Mortgage payments are to be credited in the month received*

The second disputed provision in Ms. Winston's Chapter 13 plan requires holders and/or servicers of claims secured by liens on real property "to apply the direct mortgage payments, if any, paid by the trustee or by the debtor to the month in which they were made under the plan or directly by the debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account." (Joint Statement of Facts, Ex. B.) This provision is meant to work in correlation with the contractually cured provision discussed above. In essence, this provision seeks to ensure that post-petition mortgage payments are actually applied as though the default has been cured, thereby preventing the incursion of late fees as a result of the unpaid default.

Several of our sister bankruptcy courts have found that such a provision is permissible as it "simply translate[s] into reality the statutory scheme contemplated in 11 U.S.C. § 1322(b)(2) and (5), as sanctioned by 11 U.S.C. § 524(i)." *Booth*, 2009 WL 81327, at *7; *Hudak*, 2008 WL 4850196, at *5; *Emery*, 387 B.R. at 725; *Watson*, 384 B.R. at 705; *Collins*, 2007 WL 2116416, at *14. Meanwhile, two courts have found the provision to be impermissible because it ostensibly violated the terms of the mortgage agreement. *See Segura*, 2009 WL 416847 at *3 (finding that

---

RIVERSIDE DICTIONARY 182 (Houghton Mifflin 1996), *with* BLACK'S LAW DICTIONARY 446 (8th ed. 2004). An ambiguity thus exists, where, on one hand, deeming the default contractually cured could mean the parties have adjudged the default to be cured or, on the other hand, the parties could merely be treating the default as though it were cured.

9

a similar provision improperly modifies the mortgage holder's contractual rights); *In re Maupin*, 384 B.R. 421, 428 (Bankr. W.D. Va. 2007) (finding that a similar provision sought "to reform the original contract with the secured creditor").

Although this provision, at first blush, appears to potentially modify Countrywide's rights under the mortgage agreement vis-à-vis the crediting of post-petition mortgage payments, the court agrees with the majority of courts that this provision translates into realty the objectives of §§ 1322(b)(2), (5) and 524(i). As discussed above, this provision works in correlation with the contractually cured provision to reinforce the policy under § 1322(b)(2), (5) of allowing arrearages to be cured over a reasonable time with maintenance payments while the case is pending.[8] In fact, practically speaking, the provision is unnecessary to achieve this purpose because the contractually cured provision would be sufficient in its own right. This is because a valid provision deeming the arrearages contractually cured would bifurcate the debt and afford Ms. Winston a fresh start managing her ongoing mortgage payments while paying down her arrearages separately through the Trustee. If Countrywide were to credit her direct mortgage payments to her arrearages, rather than to the months they were intended for, it would violate the contractually cured provision under § 524(i), and be actionable by Ms. Winston upon discharge. Moreover, the provision would not modify Countrywide's mortgage rights should Ms. Winston, for example, miss the July payment but make a payment denoted as for August. In this situation, Countrywide may credit the payments according to the terms of the mortgage agreement because § 524(i) would be rendered inapplicable post discharge because Mrs. Winston was in default. 11 U.S.C. § 524(i). Thus, this provision serves no discernable practical purpose other than to drive home the message to Countrywide that it must adjust its accounting practices to conform with

---

[8] Although the court has found that the contractually cured provision is impermissibly vague as currently drafted, it agrees with the purpose of the provision and recognizes the necessity of presuming its enforceability to the discussion of the monthly crediting provision.

10

Ms. Winston's plan as confirmed under § 1322(2), (5). Given the problems arising from mortgage holders and servicers not adjusting their accounting practices to respond to plan provisions confirmed under the Bankruptcy Code, perhaps the provision's inclusion will finally convey the message that while mortgages on primary residences are largely sacrosanct, they may not completely frustrate the public interest in having a workable means for debtors to achieve a fresh start to their economic lives. *See* RAO, *supra* note 5. The court therefore finds that while this provision is effectively surplusage, its inclusion does not violate Countrywide's rights.

### iii. Failure to notify Ms. Winston of transfer of note results in agency relationship between transferor and transferee

The final provision to which Countrywide objects states:

> [i]f a claim has been transferred by the holder thereof after the holder has filed a proof of claim with the Trustee, then the failure of the transferee to file evidence of the terms of the transfer with the Clerk of the Bankruptcy Court, with the Trustee, and with the attorney for the debtor(s) shall not serve to remove the transferor as a creditor in this case and in such situations all actions taken by the transferee subsequent to the transfer shall be deemed acts of the transferor to the same extent as if the transferee was a duly appointed agent of the transferor acting fully within the courts and scope of his, her or its agency.

(Joint Statement of Facts, Ex. B.) This provision clearly reaches far beyond what is proper and contemplated for Chapter 13 plans. Countrywide presents extensive arguments on the legal understanding of agency as "a legal relationship between a principal and an agent." *Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993). This relationship, according to Countrywide, "may be established by conduct, as well as by a written or oral contract." *Standard Builders Supplies v. Gush*, 206 A.D.2d 720, 721 (3d Dep't 1994). Moreover, "[a]n essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *In re Shulman*, 744 F.2d 293, 295 (2d Cir. 1984). An agency may be created by express authority "when the principal has made it clear that he or she desires that the

11

act under scrutiny be done." *Benton v. Hot Shot Express, Inc.*, No. 3:99-CV-1015-H, 2001 WL 1297492, at *3 (N.D. Tex. Oct. 10, 2001). Alternatively, "[a]n implied agency may be found where the circumstances suggest that the principal and agent intended to create such a relationship." *Paribas N. Am., Inc. v. Schmidt*, No. 89 CIV 8610 (LBS), 1990 WL 209417, at *7 (S.D.N.Y. Dec. 11, 1990). Such a relationship is based on apparent authority between the principal and the agent, and this authority entails "the 'power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestation.'" *Id.* at *8. Furthermore, under New York law, apparent authority requires that "the *principal must manifest to the third party* that he consents to have the act done on his behalf by the person purporting to act for him." *Id.*

Countrywide correctly points out that there is absolutely no basis upon which the court can find an agency relationship between it and a heretofore non-existent transferee. Moreover, and more importantly to this analysis, the proposed provision improperly intrudes on the prerogative of this court and the rights of Countrywide, by prospectively resolving a potential dispute with no reference to the specific facts and circumstances of that dispute.

Furthermore, Countrywide points to Rule 3001(e)(4), arguing that it provides a framework for objecting to improper filing of terms of a transfer of a claim for security. Rule 3001(e)(4) provides:

> (4) Transfer of Claim for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If a timely objection is filed by the alleged transferor, the court, after notice and a hearing, shall determine whether the claim has been transferred for security. If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the

12

>claim, payment of dividends thereon, or participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

FED. R. BANKR. P. 3001(e)(4). It should be noted, however, that "failure to file notice of a transfer under Rule 3001(e) only affects the standing of the transferee as a creditor." *In re B.C. Enter., Ltd.*, 160 B.R. 827, 833 (Bankr. D. Ariz. 1993) (citing *Official Unsecured Creditors' Comm. v. Stein* (*In re SPM Manufacturing Corp.*), 984 F.2d 1305, 1314, n. 10 (1st Cir. 1993)). Moreover, the Bankruptcy Court for the Southern District of New York has examined the purpose of the notice provision and concluded that:

>Bankruptcy Rule 3001(e) provides a mechanism for notice of the transfer, providing benefits for each of the claim transferor (giving the transferor notice and opportunity to be heard in the event that it disagrees with the assertion that there was an assignment) and transferee (helping ensure that the transferee will receive the distributions on account of the claim). It is silent in requiring service on the debtor or the Disbursing Agent, and its failure to require notice on the debtor has been recognized, as has its failure to require notice on other parties in interest. In light of that, it has been stated that "it is questionable" whether a party other than the alleged transferor may object to a purported transfer.[9]

*In re Nutriplus, LLC*, No. 99-44743 (REG), 2002 WL 31254797, *8 (Bankr. S.D.N.Y. Sept. 20, 2002) (internal citations omitted); *see In re Hoffman*, 98 B.R. 783, 783 (Bankr. S.D. Ohio 1989) (concluding that the notice requirement of 3001(e)(2) was not waived by transferee notifying the debtors, their attorney, and the Chapter 13 trustee because "none are the real party affected by the transfer"; the real affected party was the transferor). In light of the intent behind the notice of transfer requirement to protect a transferor's rights, it would be inappropriate to penalize Countrywide, as transferor, for the violation of its own rights by the transferee.

---

[9] Countrywide implies in its Memorandum of Law that Rule 3001(e)(4) provides a means for Ms. Winston to object to a failure to file notice of transfer. This is presumably under the "party in interest" language. While debtors are considered to be parties in interest under other Code and Rule provisions, it is not clear that they are under 3001(e)(4). Compare 9 *Collier on Bankruptcy*, para. 3007.01[2], at p. 3007-5, *with Jordan v. Colorado Student Loan Program* (*In re Jordan*), 146 B.R. 31, 32 (D. Colo. 1992) (finding that there is not requirement that the debtor be notified of the transfer), *and In re Crosscreek Apartments, Ltd.*, 211 B.R. 641, (Bankr. E.D. Tenn. 1997) (citing *Jordan*), *and* 9 *Collier on Bankruptcy*, para. 3001.08[1][a], at p. 3001-23. This court need not address this conflict, however, because Ms. Winston's plan provision violates the intent of Rule 3001(e), as is discussed *infra*.

It should also be noted, that Rule 3001(e)(4) is only applicable to the extent that Countrywide transfers the note for security. If Countrywide were to transfer the note for anything other than security (e.g., selling it for money) then Rule 3001(e)(2) would apply.[10] Rule 3001(e)(2) does not provide the same mechanism for "parties in interest" to object in the event that a claim is transferred for something other than security. *See* FED. R. BANKR. P. 3001(e)(2); *see also supra* note 8. Nevertheless, the absence of this language does not change the court's conclusion that the plan provision is inappropriate. As stated above, Rule 3001(e) is intended as a safeguard for transferors, and Ms. Winston's plan provision clearly violates that intent.

Ms. Winston provided no specific defense for this particular provision, nor did she offer any explanation as to why it was included. The court suspects that she intended it to ensure that all relevant parties are notified of a transfer of the claim secured by her home. This purpose may be proper, but the way the provision was drafted violates (1) Countrywide's rights by creating an agency relationship between it and a heretofore unknown transferee, and (2) the intent of Rule 3001(e)(2), (4). The court therefore finds that the provision is an impermissible plan provision.

---

[10] Rule 3001: Proof of Claim
. . . .
(e) Transferred claim
. . . .
(2) Transfer of claim other than for security after proof filed

If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

FED. R. BANKR. P. 3001(e)(2).

## II. Countrywide's claim for post-petition fees in its proof of claim for pre-petition arrears is permissible

Countrywide claims, and Ms. Winston disputes, that $150.00 in plan review fees and $150.00 in attorneys' fees for preparation of the proof of claim incurred post-petition, but pre-confirmation, may be sought in its proof of claim under § 506(b). Section 506(b) of the Bankruptcy Code provides that

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). While this provision does not explicitly include the types of fees Countrywide seeks, they have been accepted by several bankruptcy courts, assuming certain conditions have been met. *In re Conde-Dedonato*, 391 B.R. 247, 250-51 (Bankr. E.D.N.Y. 2008); *In re Madison*, 337 B.R. 99, 106 (Bankr. N.D. Miss. 2005); *In re Atwood*, 293 B.R. 227, 232 (B.A.P. 9th Cir. 2003); *In re Powe*, 278 B.R. 539, 553 (Bankr. S.D. Ala. 2002). It is procedurally appropriate for a creditor to assert such charges in a proof of claim, because "those expenses are inherently part of the pre-petition claim, although contingent and although the services may have been rendered post-petition." *Atwood*, 293 B.R. at 232. Ms. Winston claims, however, that inclusion of the fees in the proof of claim is improper because they are, in reality, post-petition fees that should be approved by the court pursuant to Rule 2016(a).[11] *See Tate v.*

---

[11] Rule 2016. Compensation for Services Rendered and Reimbursement of Expenses

(a) Application for compensation or reimbursement

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and

15

*NationsBanc Mortgage Corp.* (*In re Tate*), 253 B.R. 653, 665 (Bankr. W.D.N.C. 2000) (holding that creditors who seek attorneys' fees under § 506(b) must file and serve a notice and fee application under Rule 2016(b)); *In re Banks*, 31 B.R. 173, 178-79 (Bankr. N.D. Ala. 1982) (holding that attorneys' fees included in creditor's proof of claim for filing said claim and attending confirmation hearings were neither reasonable nor necessary).

While the court does not dispute the potential applicability of Rule 2016(a), it recognizes that the objectives of that rule may be achieved by seeking the fees in the proof of claim. In the *Atwood* case the court found that "in addition to a Rule 2016(a) application, a proof of claim may be procedurally appropriate." *Atwood*, 293 B.R. at 232 (citing *Powe*, 278 B.R. at 347). The *Atwood* and *Powe* courts reasoned, and this court agrees, that any question of whether a debtor has been afforded sufficient due process is moot because either procedure provides the debtor an opportunity to object and be heard. *Id.*

In order for Countrywide's claim to be proper, however, several tests must be met. First, Countrywide must, in fact, be oversecured. *Madison*, 337 B.R. at 102. Ms. Winston's Schedule A indicates that the real property in question is valued at $205,000.00, with secured claims totaling $158,540.18. (Voluntary Pet., Schedule A, (Doc. No. 1).) Thus, by Ms. Winston's own estimation, Countrywide is oversecured. Second, Countrywide must specifically disclose the fee amounts sought. *Madison*, 337 B.R. at 104. Countrywide clearly did so in its proof of claim that gave rise to Ms. Winston's objection. (Joint Statement of Facts, Ex. A.) Third, and finally, the

---

whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefore, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.
FED. R. BANKR. P. 2016(a).

16

sought after fees must be reasonable. *Madison*, 337 B.R. at 106. The court finds that $150.00 for plan review fees and another $150.00 in attorneys' fees for preparing the proof of claim are reasonable. *See Conde-Dedonato*, 391 B.R. at 250-51 (finding that $150.00 in attorneys' fees for filing proof of claim and $200.00 for a plan review fee was reasonable). Thus, the court finds that inclusion of post-petition, pre-confirmation attorneys' and plan review fees in the proof of claim is permissible under § 506(b).

## CONCLUSION

The court therefore sustains Countrywide's objections to the contractually cured and agency provisions of Ms. Winston's aforementioned plan provisions and finds that inclusion of attorneys' fees and plan review fees incurred post-petition, but pre-confirmation, in its proof of claim is permissible. The court overrules Countrywide's objection to the monthly crediting provision, but also finds it to be surplusage. Confirmation is denied without prejudice to the filing of an amended plan by Ms. Winston.

It is SO ORDERED

Dated:       May 7, 2009
             Albany, New York

/s/ Robert E. Littlefield, Jr.

Hon. Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge

17